**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LINDA STANLEY,<br><br>               Plaintiff,<br><br>v.<br><br>DIRECT ENERGY SERVICES, LLC,<br><br>               Defendant. | Civil Action<br><br><br>Case No: 7:19-cv-03759-KMK |

**MEMORANDUM OF LAW IN SUPPORT OF UNCONTESTED MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ................................................................................ 1

BACKGROUND ................................................................................. 4

    I.       THE LITIGATION. ................................................................ 4

    II.      THE SETTLEMENT TERMS ............................................... 5

ARGUMENT ..................................................................................... 6

    I.       STANDARD FOR APPROVAL OF A CLASS ACTION SETTLEMENT. ........ 6

          A.     Ms. Stanley Has Adequately Represented The Class. ............................... 8

          B.     The Settlement Agreement Was Negotiated At Arm's Length. ................. 9

          C.     The Litigation Is Complex And Will Be Expensive And Lengthy. ........... 10

          D.     Ms. Stanley Faces Substantial Hurdles In Establishing Liability. ............ 11

          E.     Ms. Stanley Faces Substantial Hurdles In Proving Damages. ................. 12

          F.     Maintaining The Class Action Through Trial May Be Challenging. ....... 13

          G.     Direct Energy May Not Be Able To
Withstand A Substantially Greater Judgment. ........................................ 13

          H.     The Settlement Amounts Are
Reasonable In Light Of The Best Possible Recovery
And In Light Of All The Attendant Risks Of Litigation ........................ 13

          I.     The Settlement Agreement
Facilitates Claims Submission And Processing,
And The Distribution Of Benefits To The Settlement Class ................... 16

          J.     Class Counsel Fees Were
Separately Negotiated And Would Not
Diminish The Benefits To The Settlement Class ..................................... 17

          K.     There Are No Agreements To Identify Pursuant To Rule 23(e)(3). ......... 18

          L.     The Settlement Agreement Treats Class
Members Equitably Relative To Each Other. .......................................... 18

          M.    The Reaction Of The Class Was Overwhelmingly Positive. .................... 18

          N.     The Current Stage Of The Instant Litigation And
The Extensive Discovery That Has Occurred Favor Final Approval ....... 21

    III.    NOTICE WAS PROVIDED IN THE BEST PRACTICABLE MANNER. ........ 21

    IV.    THE COURT SHOULD CERTIFY THE CLASS. ............................................. 23

i

CONCLUSION..................................................................................................................... 23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Charron v. Pinnacle Grp. N.Y. LLC,*
   874 F. Supp. 2d 179 (S.D.N.Y. 2012) ...................................................................... 19

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974) ........................................................................... 7, 13

*County of Suffolk v. Long Island Lighting Co.,*
   907 F.2d 1295 (2d Cir. 1990) ............................................................................. 19

*D'Amato v. Deutsche Bank,*
   236 F.3d 78 (2d Cir. 2001) ........................................................................... 7, 19

*Ferrington v. McAfee, Inc.,*
   No. 10-01455, 2012 WL 1156399 (N.D. Cal. Apr. 6, 2012)................................. 19

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.,*
   271 F. App'x 41 (2d Cir. 2008) .......................................................................... 22

*In re American Bank Note Holographics, Inc. Sec. Litig.,*
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................................ 18

*In re Austrian and German Bank Holocaust Litig.,*
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................... 7, 10, 13, 21

*In re EVCI Career Colleges Holding Corp. Sec. Litig.,*
   No. 05-10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007)................................. 9

*In re Luxottica Grp. S.p.A. Sec. Litig.,*
   233 F.R.D. 306 (E.D.N.Y. 2006)........................................................................... 6

*In re Michael Milken and Associates Sec. Lit.,*
   150 F.R.D. 57 (S.D.N.Y. 1993) ......................................................................... 14

*In re Nissan Radiator/Transmission Cooler Litig.,*
   No. 10-7493, 2013 WL 4080946 (S.D.N.Y. May 30, 2013).......................... 7, 19, 21

*In re PaineWebber Ltd. Partnerships Litig.,*
   171 F.R.D. 104 (S.D.N.Y. 1997)......................................................................... 11

*In re "Agent Orange" Prod. Liab. Litig.,*
   611 F. Supp. 1396 (E.D.N.Y. 1985) .................................................................... 14

*Lane v. Direct Energy Servs., LLC,*
   No. 19-00674, 2021 WL 1610160 (S.D. Ill. Apr. 26, 2021) ................................. 11

*Lane v. Direct Energy Servs., LLC*,
  No. 19-00674, 2020 WL 7443153 (S.D. Ill. Dec. 18, 2020) ................................................... 12

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................................. 18

*Martens v. Smith Barney, Inc.*,
  181 F.R.D. 243 (S.D.N.Y. 1998) ......................................................................................... 21

*Melito v. American Eagle Outfitters, Inc.*,
  No. 14-2440, 2017 WL 3995619 (S.D.N.Y. Sept. 11, 2017) ................................................ 19

*Perez v. Asurion Corp.*,
  501 F. Supp. 2d 1360 (S.D. Fla. 2007) ................................................................................ 20

*Plummer v. Chemical Bank*,
  668 F.2d 654 (2d Cir. 1982) ................................................................................................. 21

*Poertner v. Gillette Co.*,
  618 Fed. Appx. 624 (11th Cir. 2015) .................................................................................... 20

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
  237 F.R.D. 26 (E.D.N.Y. 2006) ........................................................................................... 10

*Richards v. Direct Energy Services, LLC*,
  915 F.3d 88 (2d Cir. 2019) ................................................................................................... 12

*Saldana v. Middletown Car-G-Cam Uni Corp.*,
  No. 15-3651, 2015 WL 12591678 (S.D.N.Y. Sept. 23, 2015) ............................................... 9

*Sevugan v. Direct Energy Services, LLC*,
  931 F.3d 610 (7th Cir. 2019) ................................................................................................ 12

*Stinson v. City of New York*,
  256 F. Supp. 3d 283 (S.D.N.Y. 2017) .................................................................................. 13

*TBK Partners, Ltd. v. W. Union Corp.*,
  675 F.2d 456 (2d Cir. 1982) ................................................................................................. 19

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*,
  No. 01-11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ................................................ 14

*Touhey v. United States*,
  No. 08-01418, 2011 WL 3179036 (C.D. Cal. July 25, 2011) ............................................... 20

*Vasco v. Power Home Remodeling Grp. LLC*,
  No. 15-4623, 2016 WL 5930876 (E.D. Pa. Oct. 12, 2016) ................................................... 10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................ 7, 9, 19

*Weigner v. City of N.Y.*,
    852 F.2d 646 (2d Cir. 1988) ............................................................ 22

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ............................................................ 6, 10

*Williams v. First National Bank*,
    216 U.S. 582 (1910) ............................................................ 6

## **Rules**

Fed. R. Civ. P. 23 ................................................................. *passim*

## **Other Authorities**

4 Alba Conte & Herbert B. Newberg,
Newberg on Class Actions § 11.41, at 108 (4th ed. 2002) ........................... 19

Manual for Complex Litigation (Third) § 30.42 (1995) .............................. 9

Linda Stanley ("Plaintiff" or "Ms. Stanley") submits this Memorandum of Law in support of her Motion for Final Approval of the Class Action Settlement pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) and (e).

## INTRODUCTION

After hard-fought litigation, which included motion practice, depositions and document discovery, and extensive arm's length settlement negotiations taking place in a full-day mediation before a highly regarded JAMS mediator, Plaintiff and Defendant Direct Energy Services, LLC ("Direct Energy" or "Defendant") (collectively, the "Parties") agreed to a settlement that would resolve this litigation (the "Settlement" or "Settlement Agreement").

Ms. Stanley sued Direct Energy over what she alleged was its deceptive and bad-faith pricing practices that have caused thousands of consumers to pay considerably more for electricity than they should have. She signed up for electricity through NYSEG Solutions, LLC, an energy services company (ESCO) that Direct Energy acquired in 2012. Ms. Stanley alleged that her contract promised that the variable rate would be a "market" rate, which Ms. Stanley alleges meant that the rate would take into account market costs, including Direct Energy's wholesale costs. Amended Class Action Complaint, ECF No. 21 ¶¶ 26-30 ("Complaint"). But Plaintiff alleges that, rather than upholding this contract, Direct Energy began pricing electricity so as to maximize its profits. Ms. Stanley alleges that Direct Energy's rates were sharply higher than the competitive rates available in the marketplace. Ms. Stanley alleges that Direct Energy engaged in the same conduct with respect to thousands of other former NYSEG customers, and also former customers of Energetix, Inc.[1] Direct Energy denies Ms. Stanley's allegations and maintains that it set variable rates for residential electricity in accordance with the terms of her

---

[1] NYSEG Solutions and Energetix, Inc. were owned by the same entity before their purchase by Direct Energy, and they used the same form contracts.

contract and the contracts of all class members.

Following arm's length negotiations by the Parties, including an all-day mediation session on June 3, 2021, the parties reached an agreement (the Settlement Agreement is attached as Ex. 1 to the Declaration of D. Gregory Blankinship ("Blankinship Dec.")).  The Settlement Agreement resolves all of the claims asserted in Ms. Stanley's complaint.  It confers substantial benefits on a settlement class, which is defined as: all former residential electricity customers of NYSEG Solutions or Energetix, whose accounts were acquired by Direct Energy, who transitioned from a fixed rate to a variable rate, and who paid Direct Energy at least one variable-rate charge after April 1, 2013.   Settlement Agreement ¶ 2.11.  Certain persons are excluded from the agreement, including those not originally on a NYSEG or Energetix contract, and persons such as officers and directors of the Defendant.  *Id.*

This settlement provides for monetary payments equal to $0.0056 for each kilowatt-hour class members purchased from Direct Energy while on a variable-rate plan, for an average award of $135 per customer.  The Settlement Agreement compares favorably with the settlement Judge Briccetti approved in *Hamlen v. Gateway Energy Servs. Corp.*, No. 7:16-cv-3526-VB-JCM (S.D.N.Y.) (Briccetti, J.).[2]  The settlement in *Hamlen*, the structure of which was almost identical to the Settlement Agreement in this action, provided $0.00333 per kilowatt-hour to customers.  *Hamlen*, ECF No. 130 at 13.  The settlement rate Ms. Stanley has achieved here, $0.0056 per kilowatt-hour, is 68% higher than the settlement in *Hamlen*, and the average award of $135 per customer here compares favorably with the $78.80 average in *Hamlen*.

Ms. Stanley respectfully requests that this Court now grant final approval.  First, the Settlement offers substantial benefits to class members and avoids the delay, expense, and risks

---

[2] Gateway Energy Servs. Corp. is a subsidiary of Direct Energy.

inherent in litigating class claims through trial and appeal. The Settlement's value is estimated at up to $12,524,000, exclusive of the request for attorneys' fees and expenses, the cost of settlement administration, and service awards. <u>Second</u>, the Settlement was the product of arm's length negotiations aided by an independent mediator and conducted by experienced counsel who obtained extensive formal and informal discovery in this action and, as such, were well-positioned to evaluate the strengths and weaknesses of the claims and defenses asserted, the potential damages incurred by the Class, and the fairness of the Settlement. <u>Third</u>, the positive response from the Class argues in favor of approving the Settlement. As of March 3, 2022, only 27 Class members have opted out, and there has been (at best) one objection to the settlement.[3] With two weeks left in the claims period, 25,316 of the 88,371 class members have made claims, for a claims rate of 29%.

Thus, Ms. Stanley hereby applies for the entry of an order that will certify the proposed Class and finally approve the Settlement.

---

[3] Class Counsel received one letter from one class member, Mr. Timothy Fallon, and it does include the word "objection" in the subject line. *See* Blankinship Dec. ¶ 11, Exhibit 2. Mr. Fallon's letter does not meet the requirements of an objection, as identified in the Settlement Agreement ¶ 7.2, and as required by the Preliminary Approval Order, ECF No. 66, ¶ 11. Namely, Mr. Fallon did not serve a copy on the Settlement Administrator, did not attach documents sufficient to allow the Parties to confirm that Mr. Fallon is a class member, and did not provide all of the information requested on the Claim Form. *See* Settlement Agreement ¶ 7.2. More importantly, Class Counsel disagree with Mr. Fallon's contention that the proposed relief is insufficient. As discussed more fully below, this Settlement provides substantial cash benefits to consumers and it compares favorably with other class settlements involving consumer claims against alternative energy suppliers relating to allegedly misleading variable market rate claims.

# BACKGROUND

## I.   THE LITIGATION.

Before bringing the instant action, Ms. Stanley's counsel exhaustively investigated Ms. Stanley's claims and independently obtained copies of contractual terms and conditions, as well as samples of Direct Energy's marketing materials.  Ms. Stanley's counsel also identified the relevant energy markets and the rates available from local utilities; researched what causes of action to assert against Direct Energy; and developed a theory of the case and litigation strategy.  *See* Blankinship Dec. ¶¶ 3-4.

Ms. Stanley filed her first complaint on April 26, 2019.  ECF No. 1.  The Court directed Ms. Stanley to file an amended complaint, which she did on October 18, 2019.  ECF No. 21. Direct Energy moved to dismiss that complaint on February 7, 2020.  ECF No. 27.  The Court denied that motion on June 12, 2020.  ECF No. 36.  Discovery commenced after that and continued under the Court's supervision for approximately one year.  The parties exchanged written discovery and engaged in depositions.  Blankinship Dec. ¶ 4.  This required the Plaintiff to review thousands of documents.  Ms. Stanley also engaged an expert to quantify class damages.  *Id.* ¶¶ 3-4.

Informed by their fact and expert discovery efforts, the Court's ruling on the motion to dismiss, and experience with other ESCO litigations, Ms. Stanley and Direct Energy decided to pursue settlement negotiations.  Subsequently, the Honorable Judge Diane Welsh (Ret.) conducted an all-day mediation conference on June 3, 2021.  The mediation was successful, and the Parties agreed that claiming class members would receive $.0056 per kilowatt-hour they purchased from Direct Energy.   It was only after that settlement was agreed to that the Parties then negotiated and reached agreement as to attorneys' fees, expenses, costs of administration,

and a service award for the Plaintiff.  The Parties then ultimately reduced their discussions to a writing -- the Settlement Agreement.

The Parties recognize and acknowledge the benefits of settling the action.  Ms. Stanley believes that the claims asserted in this case have merit and that the evidence developed to date supports her claims.  Despite the strengths of her claims, Ms. Stanley is mindful of the challenges to prove, and possible defenses to, the claims in this case.  Ms. Stanley further recognizes and acknowledges the expense and length of time it would take to prosecute this matter through trial, post-trial proceedings, and appeals.  Counsel for Ms. Stanley have taken into account the uncertain outcome and risks of the litigation, including the difficulties and delays inherent in litigation and the likelihood of protracted appeals.  Counsel for Ms. Stanley, therefore, determined that the Settlement Agreement is fair, reasonable, and adequate.  The Settlement Agreement confers substantial benefits upon, and is in the best interests of, Ms. Stanley and the Settlement Class.

Direct Energy maintains that it has a number of meritorious defenses to Ms. Stanley's claims.  Nevertheless, it recognizes the risks and uncertainties inherent in litigation, the significant expense associated with defending class actions, the costs of any appeals, and the disruption to its business operations arising out of class action litigation.  It also recognizes the risk that a trial on class-wide claims might present.  Accordingly, Direct Energy believes that the Settlement Agreement is likewise in its best interests.

## II.    THE SETTLEMENT TERMS.

Under the Settlement Agreement, Direct Energy, through the Settlement Administrator, shall pay Valid Claims up to $12,524,000, with claiming class members receiving $0.0056 per kilowatt-hour for electric supply service received from NYSEG Solutions, Energetix, or Direct Energy, on or after April 1, 2013, for which the customer paid while on a variable rate following a transition

from a fixed-rate plan.  Settlement Agreement ¶ 5.1.  The average cash benefit to each customer is $135.  Settlement Agreement Ex. C, proposed notice to class members, at 5.

Direct Energy has also agreed not to oppose a request for attorneys' fees and reimbursement of documented expenses of up to $2,250,000.  *Id.* ¶ 8.2.  Direct Energy also has agreed to a service award for Ms. Stanley of $5,000, as compensation for her efforts in bringing suit and achieving the settlement for the class.  *Id.* ¶ 8.7.  Direct Energy will pay any such awards separate and apart from payments to the Settlement Class.  *Id.*  It has also agreed to separately pay for Settlement Administration Costs.  *Id.* ¶ 8.6.

In return for making these settlement benefits available to all Settlement Class members, the Settlement Class members' claims will be dismissed with prejudice and all Settlement Class members (other than those who opt out) will release and be permanently barred from pursuing any claims.  *Id.* ¶¶ 11.1, 11.2, 11.3.

## ARGUMENT

## I.    STANDARD FOR APPROVAL OF A CLASS ACTION SETTLEMENT.

Strong judicial policy favors the settlement of class actions.  *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.") (citing 3 Newberg, Class Actions § 5570c, at 479-80 (1977); *Williams v. First National Bank*, 216 U.S. 582, 595 (1910)).  "Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  There is a strong public interest in quieting any litigation; this is particularly true in class actions."  *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) (citations omitted).

Courts assess proposed class action settlements to determine whether they are "fair,

reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To do so, courts must determine whether both the negotiating process leading to a settlement and the settlement itself are fair, adequate and reasonable. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *In re Nissan Radiator/Transmission Cooler Litig.*, No. 10-7493, 2013 WL 4080946, at *4 (S.D.N.Y. May 30, 2013) (Briccetti, J.) (approving class action settlement). Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the negotiation enjoys a "presumption of fairness." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000); *see also In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *4; *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

When evaluating the fairness and adequacy of a proposed class settlement, courts in this Circuit are guided by the factors enunciated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) (abrogated on other grounds). Those factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.

The recent adoption of Rule 23(e)(2) does not displace the *Grinnell* factors. *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note. Rather, it "focus[es] the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* These "core concerns" are:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i)  the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

A consideration of *Grinnell* factors and Rule 23(e)(2)'s "core concerns" indicate that the Settlement Agreement is fair, reasonable, and adequate, and therefore, should be approved.

## A.    Ms. Stanley Has Adequately Represented The Class.

Ms. Stanley has adequately represented the Settlement Class, satisfying Rule 23(e)(2)(A). But for the courage and initiative of Ms. Stanley in bringing this lawsuit, the Settlement Agreement benefitting the Settlement Class would not have been reached.  Ms. Stanley expended considerable time and effort, gathering and producing documents, recounting the facts of her case in a deposition, addressing factual issues in connection with her complaint, reviewing her complaint, and staying informed of and involved with case developments, including settlement negotiations.

With respect to Ms. Stanley's Counsel, "the focus . . . is on the actual performance of counsel acting on behalf of the class."  Fed. R. Civ. P. 23(e)(2)(A) advisory committee's note.  In

this case, both firms engaged in extensive motion and discovery practice before entering into the Settlement Agreement.  Blankinship Dec. ¶¶ 3-4; Cash Dec. ¶ 6.  Plaintiff's counsel participated in conferences before the Court, filed two complaints, largely won a motion to dismiss, engaged in discovery, and examined the fruits of that discovery.  They also retained an expert to investigate how to measure and quantify damages to the Class.  Blankinship Dec. ¶5.  Ms. Stanley's counsel also prepared for and engaged in arm's length settlement negotiations with Direct Energy, including mediation.  *Id.* ¶ 6.  Thus, they fully appreciated the strengths and weakness of the case before entering into the Settlement Agreement.

**B.    The Settlement Agreement Was Negotiated At Arm's Length.**

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores*, 396 F.3d at 116 (quoting MANUAL FOR COMPLEX LITIGATION (Third) § 30.42 (1995)) (internal quotations marks omitted).  Where a settlement is achieved through arm's-length negotiations by experienced counsel and there is no evidence of fraud or collusion, "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

The Settlement Agreement is the product of serious, informed, non-collusive negotiations.  Settlements are generally found to be non-collusive when reached with the assistance of a third-party neutral and in such situations enjoy a presumption that the settlement meets the requirements of due process.  *See, e.g.*, *Saldana v. Middletown Car-G-Cam Uni Corp.*, No. 15-3651, 2015 WL 12591678, at *2 (S.D.N.Y. Sept. 23, 2015) (noting that the assistance of "experienced" mediator Hon. Diane Welsh (Ret.) reinforces the settlement's non-collusive

nature); *Vasco v. Power Home Remodeling Grp. LLC*, No. 15-4623, 2016 WL 5930876, at *5 (E.D. Pa. Oct. 12, 2016) (the parties negotiated the Settlement Agreement at arm's length with the benefit of a neutral, experienced mediator, Judge Welsh). Settlement decisions are found to be informed where the parties exchanged evidence and information prior to negotiations. *See, e.g.*, *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006) (holding that settlement was fair, reasonable, and adequate where, *inter alia*, the parties had begun conducting discovery). Here, extensive motion practice and discovery informed settlement negotiations, including mediation before Judge Welsh (Ret.) an eminently qualified mediator. As such, Rule 23(e)(2)(B) is satisfied.

**C.    The Litigation Is Complex And Will Be Expensive And Lengthy.**

The Settlement Agreement provides substantial monetary benefits to the Settlement Class while avoiding the significant expenses and delays attendant to discovery and motion practice related to summary judgment and class certification briefing. Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000); *Weinberger*, 698 F.2d at 73 (citation omitted) ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.").

Absent an approved settlement, the Parties will be forced to continue litigation. The resulting fact-intensive trial will also result in significant expenses to all Parties. Any judgment will likely be appealed, extending the costs and duration of the litigation. The Settlement Agreement, on the other hand, will result in prompt and equitable payments to the Settlement Class. Thus, this *Grinnell* factor weighs in favor of the Settlement and satisfies Rule

23(e)(2)(C)(i).

**D.    Ms. Stanley Faces Substantial Hurdles In Establishing Liability.**

Final approval of the Settlement Agreement should be granted because Ms. Stanley faces substantial hurdles in establishing liability.  Indeed, "[l]itigation inherently involves risks."  *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Notably, Class Counsel here was unsuccessful in bringing similar claims against Direct Energy in the Northern District of Illinois.  *See Lane v. Direct Energy Servs., LLC*, No. 19-00674, 2021 WL 1610160, at *2 (S.D. Ill. Apr. 26, 2021) (granting motion to dismiss with prejudice following two attempts to amend the complaint following dismissals without prejudice).

First, Direct Energy has a colorable argument that its rates are in fact reflective of the "market" because its rates are competitive with other ESCOs.  For example, Direct Energy will point to data from the Energy Information Agency that reflects that its rates are not amongst the highest.[4]  In fact, in 2017 there were 25 other ESCOs in New York whose average rates were higher than Direct Energy's rates, and in 2018 there were 21 other ESCOs with higher rates.  While Plaintiff disagrees, there is a real risk a fact finder would side with Defendant.

Second, Direct Energy claims that Ms. Stanley understood the terms of her agreement with it; that she renewed it; and that she testified that her recent plan with Direct Energy was a good deal for her.  Moreover, Defendant believes Ms. Stanley provided testimony during her deposition that undercut her claims.

Third, Direct Energy vociferously objects to using utility rates to evaluate the propriety of Direct Energy's variable rates, as Mr. Fallon does.  Notably, the Second and Seventh Circuits have dismissed similar claims against Direct Energy, including because they found that the

---

[4] *See* https://www.eia.gov/electricity/sales_revenue_price/ (Table 12).

11

utility rate is not a proper comparator to determine whether ESCO rates are in fact based on the market. *See Richards v. Direct Energy Services, LLC*, 915 F.3d 88, 99 (2d Cir. 2019) (dismissing the plaintiff's claims as "near-frivolous" where the plaintiff contended that Direct Energy abused its discretion to set electricity rates by setting variable rates higher than the utility rate); *Sevugan v. Direct Energy Services, LLC*, 931 F.3d 610, 615 (7th Cir. 2019) (dismissing the plaintiff's claims and finding that the utility rate was "not valid for assessing the 'generally prevailing market price for electricity.'"). *See also Lane v. Direct Energy Servs., LLC*, No. 19-00674, 2020 WL 7443153, at *2 (S.D. Ill. Dec. 18, 2020) (noting that the court "found that the Lanes used the flawed comparators of a local utility and wholesale prices to support their case for breach of contract with DES when *Sevugan* held that those comparators were not appropriate gauges for market prices used by [energy service companies]."). Indeed, Defendant's counsel has obtained dismissals or won summary judgments in at least three similar actions: *Richards*, *Sevugan*, and *Lane*.

Thus, this factor weighs in favor of the Settlement and satisfies Rule 23(e)(2)(C)(i).

**E.     Ms. Stanley Faces Substantial Hurdles In Proving Damages.**

In order to prove damages, Ms. Stanley must prove that Direct Energy's variable rates are not competitive or commensurate with those otherwise available in the relevant markets; that Direct Energy falsely represented that they would be; and that Direct Energy's disclosures concerning the nature of and the pricing methodology for Direct Energy's variable rates are inadequate and misleading. This is an expensive and potentially challenging task. Moreover, Direct Energy hired its own expert to opine that its rates were reasonable, based on market factors, and properly disclosed to Ms. Stanley. While Ms. Stanley is confident that her expert's findings would withstand scrutiny, proving damages is nonetheless a substantial and daunting

undertaking.  Thus, there are substantial obstacles Ms. Stanley must overcome to prove damages in this case, a factor favoring approval of the Settlement Agreement and satisfying Rule 23(e)(2)(C)(i).

**F.    Maintaining The Class Action Through Trial May Be Challenging.**

Ms. Stanley is confident in her ability to maintain this action as a class through trial. Nonetheless, she recognizes that there are substantial hurdles in being able to do so.  If the Settlement Agreement is not approved, Ms. Stanley would move for class certification and Defendant would oppose the motion. Even assuming the motion is granted, Direct Energy might move to decertify the class prior to trial.  The proposed Settlement avoids the risks inherent in further litigation.  Thus, this factor weighs in favor of approval of the Settlement and satisfies Rule 23(e)(2)(C)(i).

**G.    Direct Energy May Not Be Able To Withstand A Substantially Greater Judgment.**

While Ms. Stanley has no concern that Direct Energy has the ability to pay all claims made in the context of this Settlement Agreement, there is no certainty it could bear the damages award that could be assessed were the case to proceed through trial.  In any event, a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9.  Thus, this factor weighs in favor of the Settlement and satisfies Rule 23(e)(2)(C)(i).

**H.    The Settlement Amounts Are Reasonable In Light Of The Best
         Possible Recovery And In Light Of All The Attendant Risks Of Litigation.**

The adequacy of a settlement amount offered should be judged "in light of the strengths and weaknesses of the Plaintiffs' case."  *Stinson v. City of New York,* 256 F. Supp. 3d 283, 294 (S.D.N.Y. 2017).  That the settlement amount is less than the maximum potential recovery is not a barrier to approval.  *See Grinnell Corp.*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a

satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."). Indeed, judging whether a settlement is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *In re Michael Milken and Associates Sec. Lit.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993).

Here, there is a broad range of potential recovery if the case were to be litigated through trial. On the one hand, Ms. Stanley could prevail on her claims and recover the difference between Direct Energy's variable rates and the rates charged by local utilities, or between Direct Energy's variable rates and what the rates would have been had Direct Energy charged what Ms. Stanley believes was a commercially reasonable profit margin. In addition, consumers can receive statutory penalties under state law. On the other hand, Direct Energy could prevail on its legal arguments to defeat liability entirely, resulting in no recovery for class members. Given this broad range of possible damages, the Settlement Agreement provides a substantial recovery that falls well within the range that courts have traditionally found to be fair and adequate under the law.

Moreover, the fact that the Settlement Agreement provides for a prompt payment to claimants favors approval of the settlement. *See Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01-11814, 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004) ("[T]he proposed Settlement provides for payment to Class members now, not some speculative payment of a hypothetically larger amount years down the road. Given the obstacles and uncertainties attendant to this complex litigation, the proposed Settlement is within the range of reasonableness, and is unquestionably better than the other likely possibility – little or no recovery.") (citing *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y.

1985) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly.") (modified on other grounds)).

Plaintiff's concern is not merely hypothetical, but is based on Class Counsel's experience litigating against other ESCOs. Indeed, Class Counsel represents a certified class in *BLT Steak LLC v. Liberty Power Corp. L.L.C.*, No. 151293/2013, (Sup. Ct. N.Y. Cty.), and in that case, after years of litigation and hundreds of thousands in expenses and millions in fees, it appears nearly certain that counsel and the class will receive nothing in on-going bankruptcy proceedings. *See In re Liberty Power Holdings, LLC*, No. 21-13797 (Bankr. S.D. Fla.). Class Counsel faces similar issues in *Jordet v. Just Energy Solution, Inc.*, No. 18-953 (W.D.N.Y.), where, after three years of litigation, the defendant declared bankruptcy and counsel and the class may ultimately receive no relief. Initial Order ¶ 11, *In re Just Energy Grp. Inc.*, No. CV-21-00658423-00CL (Ontario Super. Ct. of Justice Mar. 9, 2021); *In re Just Energy Grp. Inc.*, No.21-30823 (Bankr. S.D. Tex. Mar. 9, 2021), Dkt. 23. In fact, Defendant's business model may not survive in its current form because of regulatory changes including in New York and Connecticut where ESCOs ability to charge variable rates has been restricted.[5]

Notably, this Settlement compares favorably with other class settlements involving consumer claims against alternative energy suppliers relating to allegedly misleading variable market rate claims. *See Hamlen v. Gateway Energy*, ECF No. 130 at 13 (providing $0.00333 per kilowatt-hour to customers and an average award of $78.80); *Chen v. Hiko Energy, LLC*, No. 14-

---

[5] *See* Press Release, "PSC Enacts Significant Reforms to the Retail Energy Market," (December 12, 2019), http://www3.dps.ny.gov/pscweb/WebFileRoom.nsf/Web/51A7902329FEA7B7852584CE005CF88D/$Fil e/pr19110.pdf?OpenElement (in December 2019, the NYPSC placed restrictions on the variable rate pricing practice that Plaintiff challenges in this action); *see also* Connecticut Public Act No. 15-90, An Act Concerning Variable Electric Rates (prohibiting retail electric suppliers from entering into contracts for residential electric generation services that are variable during the initial term).

1771, ECF Nos. 83, 93 (S.D.N.Y.) (Briccetti, J.) (providing a settlement with a per-class member cash option cap of $60); *Vitale v. U.S. Gas & Electric, Inc.*, No. 14-4464, ECF Nos. 53, 63 (D.N.J.) (providing a $1,825,000 cash fund to be paid to class members, resulting in a $4.60 per-class member); *Edwards v. N. Am. Power & Gas, LLC*, No. 14-1714, ECF No. 133 (D. Conn. Aug. 3, 2018) (providing for $.00351 per kwh); *Claridge v. N. Am. Power & Gas, LLC*, No. 15-1261, ECF No. 152 (S.D.N.Y. June 29, 2018) (same).  Thus, this factor militates in favor of the Settlement Agreement and satisfies Rule 23(e)(2)(C)(i).[6]

## I.    The Settlement Agreement Facilitates Claims Submission And Processing, And The Distribution Of Benefits To The Settlement Class.

The Settlement Agreement provides for a convenient and efficient way of submitting and processing claims.  Class Members may submit claims online through the Settlement Website or by mail.  *See* Settlement Agreement ¶ 5.1.  To facilitate the submission of Claim Forms, the Short-Form Notice mailed to Class Members includes a pre-paid tear-off return claim form.  *Id.* ¶¶ 2.41, 6.8.  A Class Member has the ability to use the unique identifying number assigned by the Short-Form Notice and Reminder Notice to automatically populate the online form and find out the payment associated with the property; and to update mailing addresses online.  *Id.* ¶ 6.9.  The Claims Administrator is receiving, reviewing, and approving or rejecting claims according to the standards and procedures set forth in the Settlement Agreement.  *Id.* ¶¶ 6.1, 6.2.

The Settlement Agreement also provides for an efficient way of distributing settlement benefits to the Class.  Within 14 days after the Effective Date of the Settlement, the Settlement Administrator shall establish a non-interest bearing checking account at a federally insured depository institution.  *Id.* ¶ 6.13.  Then, within 30 days of the Effective Date, Direct Energy shall

---

[6] Notably, if Mr. Fallon is correct regarding his total kilowatt hour usage (27,522 from 2017-2020), then his settlement benefit will be $154, a substantial payment for any consumer class action settlement.

deliver to the Settlement Administrator the aggregate amount of funds to be deposited in the account. *Id.* ¶ 6.14.  Within 14 days after funding of the account, the Settlement Administrator shall draw and mail checks payable to Class Members with Valid Claims, remailing undeliverable checks to the extent valid current addresses are available (including by means of a one-time skip trace).  *Id.* ¶ 6.15. Thus, Rule 23(e)(2)(C)(ii) is satisfied.

The notice and claims procedure here compares favorably to the notice and claims procedure this Court approved in *Tardibuono-Quigley v. HSBC Mortgage Corporation (USA)*, No. 15-06940, ECF No. 177 (S.D.N.Y. May 21, 2020) (Karas, J.) (approving settlement).  There, the Court approved a notice and claims process that is the same as proposed here, except that here the postcard notice comes with a pre-paid return postcard that class members can simply drop in the mail to make a claim.  Moreover, the notice and claims process here is the same as the process Judge Briccetti approved in *Hamlen v. Gateway Energy*, No. 7:16-3526 (S.D.N.Y.), where the claims rate was a respectable 18% of all class members.  As of March 3, 2022, the claims rate in this Action was 29%.  *See* Angeion Dec. ¶ 7, 13).  With a few weeks remaining in the Claims Period, Plaintiff is cautiously optimistic that the claims rate will increase.

**J.    Class Counsel Fees Were Separately Negotiated And
        Would Not Diminish The Benefits To The Settlement Class.**

Pursuant to the Settlement Agreement, Direct Energy has agreed not to oppose a request for attorneys' fees and documented expenses (collectively, "Class Counsel Fees") of up to $2,250,000 *Id.* ¶ 8.2.  Direct Energy shall pay any such award separately and apart from payments to the Settlement Class.  *Id.* ¶ 8.3.  Thus, payment of Class Counsel Fees shall not diminish the benefits to the Settlement Class.  Moreover, the Parties negotiated Class Counsel Fees only after reaching an agreement on the substantive terms of the Settlement.  *See* Blankinship Dec. ¶ 8.  In fact, the Settlement Agreement provides that "[c]ourt approval of Class Counsel's Fee Award will not be a

condition of the Settlement." *Id.* ¶ 8.5.  Thus, Rule 23(e)(2)(C)(iii) is satisfied.

**K.    There Are No Agreements To Identify Pursuant To Rule 23(e)(3).**

Parties seeking the approval of a settlement are required to identify any agreement made in connection with the proposed settlement.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iii) and 23(e)(3).  There are no such agreements requiring identification.

**L.    The Settlement Agreement Treats Class Members Equitably Relative To Each Other.**

Rule 23(e)(2)(D) is satisfied.  The Settlement Agreement treats Direct Energy's variable rate customers equally by allowing recovery of benefits based on the same rate, $.0056 per kilowatt-hour.

**M.    The Reaction Of The Class Was Overwhelmingly Positive.**

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (citing *In re American Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (citation omitted)).

Here, Class Member response to the Settlement has been overwhelmingly positive, although the Claims Period is ongoing

<u>First</u>, as of March 3, 2022, only 27 Class members have opted out of the Settlement, and one Class Member has (arguably) objected.  *See* Angeion Decl. ¶ 14; Blankinship Decl. Ex. 2.[7] The fact that there are only 27 opt-outs and (at best) one objection is especially noteworthy, as "the notice and approval process generally solicits negative feedback regarding a settlement, because it is designed to solicit opt outs and objections by advising class members of the

---

[7] The deadline to object or request exclusion is March 22, 2022.

procedures and deadlines for filing such responses with the court. . . . [I]n litigation involving a large class, such as that here, it would be extremely unusual not to encounter objections." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 197 (S.D.N.Y. 2012). The Second Circuit has stated that, where "only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (citing 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.41, at 108 (4th ed. 2002); *see also Melito v. American Eagle Outfitters, Inc.*, No. 14-2440, 2017 WL 3995619, at *14 (S.D.N.Y. Sept. 11, 2017) (finding the settlement to be "substantively fair" and a class member's objection "meritless" where the class member claimed the settlement amount "recovers only really the tiniest fraction of one percent of the class members' individual statutory damages"). And courts routinely find that the reaction of the class is positive and weigh this factor in favor of approval even when there are more objections and opt-outs. *See, e.g.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) (holding that the district court properly concluded that 18 objections from a class of 27,883 weighed in favor of settlement); *Charron*, 874 F. Supp. 2d at 196 (finding that 118 objectors from a class of 22,000 weighed in favor of approving the settlement); *In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *6 (finding reaction of class positive when there were 198 opt-outs and 85 objections in class of 764,277).[8]

Second, the 29% claims rate here is quite good. "[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3-5 percent." *Ferrington v. McAfee, Inc.*, No. 10-1455, 2012 WL 1156399, at *4 (N.D. Cal. Apr. 6, 2012); *see also In re Nissan Radiator/Transmission*

---

[8] In fact, courts in this District have approved settlements even when a majority of the class objected. *See, e.g.*, *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1325 (2d Cir. 1990) (approving settlement where "a majority" of class objected); *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 462 (2d Cir. 1982) (between 54 and 58 percent of class objected).

*Cooler Litig.*, 2013 WL 4080946, at *6 (approving class action settlement when claims rate was less than 2%). In a similar action alleging essentially identical claims as those alleged against Direct Energy, Judge Briccetti of the Southern District of New York approved a claims-made class settlement with a lower claims rate. *See* Memorandum of Law in Support of Uncontested Motion for Final Approval of Class Action Settlement at 19, *Hamlen v. Gateway*, No. 16-03526, ECF No. 128 (S.D.N.Y. July 17, 2019), (noting claims rate of 14.9% of an approximately 117,073 member class as of three weeks in advance of the deadline); Final Judgment and Order of Dismissal at 6-7, *Hamlen v. Gateway*, No. 16-03526, ECF No. 140 (S.D.N.Y. Sept 11, 2019) (finally approving settlement, finding that the "notice, opt-out and claims submission procedures . . . fully satisfy Rule 23 . . . and the requirements of due process" and that the settlement was "fair, reasonable, and adequate").

Indeed, courts have approved claims-made class settlements where the claims rate was substantially lower. *See, e.g.*, *Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 625-26 (11th Cir. 2015) (unpublished) (approving 7.26 million-member settlement class when just 55,346 -- less than 1% -- filed claims); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) (approving 10.3 million-member settlement class when less than 119,000 -- approximately 1.1% -- filed claims); *Touhey v. United States*, No. 08-1418, 2011 WL 3179036, at *7-8 (C.D. Cal. July 25, 2011) (finding a 2% response rate acceptable -- 38 responses out of 1,875 notices mailed -- where there were no objections and the overall recovery was fair and reasonable); *Arthur v. SLM Corp.*, No. 10-198 (W.D. Wash. Aug. 8, 2012), ECF No. 249 at 2-3 (claims rate of approximately 2%).

The pittance of opt-outs and objections to date (0.033%), coupled with a claims rate substantially higher than typical of consumer class actions, weighs heavily in favor of the Settlement.

**N.    The Current Stage Of The Instant Litigation And The Extensive Discovery That Has Occurred Favor Final Approval.**

This action has been pending for years and the legal issues in this case have been thoroughly vetted.  Ms. Stanley's counsel conducted a thorough investigation of Ms. Stanley's claims, and Defendant's counsel did so as well.  The Parties engaged in extensive discovery, although completion of discovery is not a prerequisite to settlement approval.  *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 ("'To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery . . . it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.'  Additionally, 'the pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit.'") (citing *Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir. 1982) and quoting *Martens v. Smith Barney, Inc.,* 181 F.R.D. 243, 263 (S.D.N.Y. 1998)); *In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *6-7 (there need only have been sufficient investigation and discovery for the parties to understand the strengths and weaknesses of the case and extensive discovery is not necessary).  The parties also engaged in arm's-length negotiations through an experienced mediator.  In the mediation, the parties exchanged briefs and research.  Thus, each side had a thorough understanding of the case and were well-positioned to evaluate the merits of the Action before reaching a settlement.  Given the extent of motion practice and discovery that preceded and informed the settlement negotiations, final approval of the Settlement is warranted.

**III.    <u>NOTICE WAS PROVIDED IN THE BEST PRACTICABLE MANNER.</u>**

Rule 23(c)(2)(B) requires that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through

reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule also requires that any such notice clearly and concisely state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

Here, the Court approved the form and content of the proposed Long Form Notice and Short Form Notice (attached to Angeion Decl. as Exhibits B and C) (collectively, "Class Notice") and approved the Parties' proposal to distribute the Short Form Notice and Reminder Notice by U.S. Mail and the Long Form Notice via the Internet. ECF No. 66 at 3-4. The Court further found that "the Parties' proposal regarding class notice to potential class members constitutes the best notice practicable under the circumstances and complies fully with the notice requirements of due process and Fed. R. Civ. P. 23." *Id.*

Pursuant to the schedule approved by the Court for the dissemination of the Class Notice, the Settlement Administrator mailed the Short Form Settlement Notice to Class members on December 20, 2021, after confirming and updating the mailing addresses using the National Change of Address database, and re-mailed notices returned undeliverable after conducting a one-time skip trace. Angeion Decl. ¶¶ 6-8. The Settlement Administrator also established a website containing all the information required by this Court and a dedicated toll-free phone number for inquiries from Class members. Angeion Decl. ¶ 11-12.

"It is clear that for due process to be satisfied, not every class member need receive actual notice, as long as counsel 'acted reasonably in selecting means likely to inform persons affected.'" *In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*, 271 F. App'x 41, 44 (2d Cir. 2008) (quoting

*Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988)).  The Federal Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the class.  *See* Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010).  The notice plan here easily meets these standards, as it provided direct notice to all of the Settlement Class, and 96% of those notices were received.  *See* Angeion Decl. ¶¶ 6-9.[9]  Accordingly, this Court should grant final approval of the Settlement.

## IV.    **THE COURT SHOULD CERTIFY THE CLASS.**

Ms. Stanley moved to preliminarily certify the Class for settlement purposes, and the Court granted the motion on November 16, 2021.  *See* ECF No. 66.  For the reasons stated in Ms. Stanley's Memorandum of Law in Support of Ms. Stanley's Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 63), this Court should certify the Class for settlement purposes.

**CONCLUSION**

Ms. Stanley respectfully requests that the Court finally approve the Settlement Agreement.

Dated:  White Plains, New York
          March 7, 2022

**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**

By: */s/ D. Greg Blankinship*
D. Greg Blankinship
Chantal Khalil
One North Broadway, Suite 900
White Plains, New York 10601
Tel: (914) 298-3281
gblankinship@fbfglaw.com
ckhalil@fbfglaw.com

---

[9] There are 88,371 class members.  *See* Angeion Dec. ¶ 6.  Notices were mailed to all class members, some of which were returned.  *Id.* ¶ 9.  The Settlement Administrator was able to find new addresses for most class members whose notice was returned, leaving only 3,920 whose notice was returned and for whom an updated address could not be identified.  *Id.* ¶ 10**.**

Matthew D. Schultz (admitted *pro hac vice*)
William F. Cash III (admitted *pro hac vice*)
**LEVIN, PAPANTONIO, RAFFERTY,
PROCTOR, BUCHANAN, O'BRIEN,
BARR, & MOUGEY, P.A.**
316 South Baylen Street Suite 600
Pensacola, FL 32502
(850) 435-7140
mschultz@levinlaw.com
bcash@levinlaw.com